case Overton versus FCA US. Good morning and may it please the court. My name is Parker Miller and I represent Frankie Overton, the appellate. The Alabama Solicitor General will have three minutes of my time and I reserve two minutes for rebuttal. Your honors, your honors, the lower courts erred in this case. The Alabama Solicitor General's Wrongful Death Act claim does not meet the traditional definition of punitive damages and excluding them is inconsistent with the party's intent as shown in amendment number four. Number two, the punitive damage exclusion term is partially unenforceable against Overton as to Alabama's law and fundamental public policy because it would exclude her sole remedy for death based on negligent conduct. And finally, number three, Overton's claims concerning FCA's post-sale conduct should pass through the bankruptcy gate if they do not implicate the sale order. Your honors, if I turn to point number one, which really goes to the definition of punitive damages, we start first with amendment number four. FCA in amendment number four assumed product liability claims and this would include death claims based on Old Chrysler's negligent conduct and this intent in interpreting the contract should guide us. The punitive damage exclusion is the only exclusion term disputed here and FCA says that punitive means punitive but FCA did not define the punitive damage term and we are also applying it to a very unique... Given that the the agreement didn't define the term, we apply its plain meaning and how do you respond to the argument that that Alabama for 150 years has interpreted the statute to award only punitive damages? Well, your honor, I think it's a multifaceted response here. I think first of all, when we look at what the Alabama Supreme Court has said, though the act does not call these damages punitive, there's no dispute from us that the Alabama Supreme Court has called these damages punitive and secondly, your honor, we don't dispute that the Alabama Supreme Court has said that they do have a punitive purpose but that doesn't end the analysis here because at the end of the day, what we need to determine is whether under this contract, this punitive damage exclusion was meant to exclude the specific type of damages brought by Frankie Overton and the way that we seek to interpret that is by looking to courts interpreting undefined terms and if you look at Alabama courts and how they've interpreted punitive damages as well as New York courts and even the Second Circuit's analysis of what constitutes the essential terms or the essential provisions of a punitive damage. Can I just ask a question? So you acknowledged a moment ago that there's no dispute that the damages that the Alabama Supreme Court calls punitive damages are meant to have a punitive purpose and so if we're looking at the contract in terms of intent, when they exclude damages that are punitive, doesn't that not evince an intent to say we're not going to accept liability for damages that have a punitive purpose? No, your honor. Well, how can we read into the contract an intent to assume liability for damages that have a punitive purpose? I think it's because as I discussed earlier, FCA assumed product liability for old Chrysler's negligent conduct. The intent was to exclude liability for outrageous conduct and that's why looking at the definition... Couldn't they have said that in the sale order? I mean the line they chose to draw was between compensatory damages and punitive damages, right? Or between liability to exclude punitive damages. They could have said we accept no liability for damages premised on liability. Why shouldn't we understand that to mean damages that have a purpose to punish? Well, your honor, they could have... Mr. Miller, you have one minute by the way. Go ahead. Okay, they could have excluded, they could have defined punitive damages, but they did not. If you look at the lower case, the lower case looks at the precise situation here. The only appellate circuit court case that's ever analyzed a contract exclusion of wrongful death damages based on an undefined punitive damage term. And what they... Excuse me, the lower had to do with an insurance contract, right? About, you know, insuring someone who, you know, doing business in Alabama. We're talking about a bankruptcy 363 sale here that has national or even international import. I see a very different dynamic at play in the court's interpretation there, and it seemed to be undercut actually by other, at similarly time, the early 70s interpretations. For example, in the Painter case of claim for an award against the Tennessee Valley Association. So yes, your honor... Did the lower really get you as far as you need to go? Yes, your honor, and I think if you look at those insurance cases, the trend that you'll see develop, those cases don't necessarily turn on the fact that they're insurance contracts. What we're seeing is the natural manifestation of Alabama's public policy, which is my second point. And so... But the public policy, the legislature has not And as Judge Manasci pointed out, it's been 150 years that Alabama has had a public policy of not calculating, you know, setting a dollar amount to compensate for a death. And for understandable reasons, but that's still the law in Alabama. The legislature has not expressed a different public policy by allowing compensatory damages for wrongful death. Your honor... I'm sorry. I'm just looking for the error in my observation. Yes, your honor. Well, I would point out a few things there. First of all, the Alabama legislature in 1987 enacted a punitive damage statute that expressly carved out Alabama wrongful death damages. So that is a manifestation of the legislature's intent to treat these damages differently than traditional punitive damages. The other thing that I would note is the fact that if you look at even those insurance cases, and we're talking about public policy here, the issue is it's where a party, either an insurance company or even in a bankruptcy setting, seeks to enforce their contract in the state of Alabama, and they assume liability for another party's negligent conduct. But then they, and that would be for death, but then they turn around and seek to eliminate the sole remedy for that death. The Alabama Supreme Court has made, and Alabama courts and federal courts, have made clear that to do so would violate Alabama state law and Alabama's fundamental public policy. All right. We'll hear from your colleague, Mr. Edmund LaCour. Thank you, Your Honor. May it please the Court, Edmund LaCour on behalf of the state of Alabama, I'd like to briefly address why the punitive damages exclusion violates Alabama public policy and why, at the very least, the issue merits a certification to the Alabama Supreme Court. So Alabama does not require insurers, for example, to issue any particular policy, but they cannot assume liability for those accidents that cause mere injury while excluding liability for those that cause death. And the rationale behind the public policy is the same one that animates the prohibition on taking out a life insurance policy on a stranger. Namely, the state does not want to incentivize death, and Alabama courts thus will not enforce contracts that create such an incentive. Now Amendment 4, as interpreted by FCA, creates that perverse incentive and thus conflicts with the state's public policy. FCA assumed liability. Does it create a perverse incentive? So, I mean, the product liability claims here are against a defunct entity. So NUCO, FCA, the new company, you know, is liable for all of its conduct, but the question we're talking about is the incentive which is liable for a predecessor entity that no longer exists. So does this really have any implications for the incentives of I think it would, your honor. I mean, for one thing, these old Chrysler vehicles are still out there on the road. We would hope that they, if that having this punitive damages liability potentially hanging over a new Chrysler's head would give them an incentive to ensure that if they learned of some liability that had been lurking in an old Chrysler vehicle that they would... Yeah, but that would be a claim for FCA's own conduct, right? I mean, that's kind of the claim that's in this case for failure to warn with respect to the son that was in the car, right? So you could still have a claim for their own conduct, but the FCA can't go back and manufacture cars that have already been manufactured by the predecessor entity in the past. That's true enough, but I think they are still, they would still be better off at the size rather than if they live and they're merely maimed by an old Chrysler vehicle. And again, it's that imbalance that I think is really problematic. It's the sort of the grotesque incentive referred to by the Supreme Court in the Moraine decision, for example. It's why we have wrongful death statutes in the first place. So you acknowledge that the new company can't go back in time and remanufacture the cars, but it's not really about incentives. You just think it seems like an unjust or a weird result, right? Well, no, I mean, I think, I mean, I think at the end of the day, like, we're dealing with a liability-assuming contract, and whether it's deemed an insurance contract or it's deemed a sale order, the same bad incentive is not going to be given effect by an over-year time. Thank you, Your Honor. And very briefly, we think if there is some debate as to whether this public policy would apply outside of the insurance contract, then we think this is sort of a prime case for certification because the issue is outcome determinative. You have, it's a... We wouldn't be asking the Alabama Supreme Court to interpret Alabama law. We'd be asking the Alabama bankruptcy document, right? Judge Shin, I think that might be the case if you're looking at the first issue, but as to the second issue, again, the public policy and whether, assuming that FCA's interpretation of the contract is correct, the public policy question, the second question, is distinct, and that is, well, could FCA's interpretation of Amendment 4 be enforced in an Alabama court? And I think the Alabama Supreme Court is best positioned to answer that because the court is still uncertain at the end of the day, and for that reason, we think certification would be proper here. All right, thank you. We'll hear from the other side. Mr. Gluckstein? Good morning, Your Honors. Thank you. May it please the court, Brian Gluckstein of Sullivan and Cromwell, on behalf of FCA US LLC. Your Honors, appellants' arguments seek to introduce ambiguity and uncertainty into what is a straightforward issue applying settled Alabama law, whether the bankruptcy court's sale order and the master transaction agreement approved by that court bar the assertion of appellants' claims seeking punitive damages under the Alabama Wrongful Death Act. Contrary to appellants' narrative, the lower courts did not single out Alabama residents, but rather applied settled Alabama law to the unambiguous terms of the MTA. The result that followed is a result of the nature of the damages recoverable under the Wrongful Death Act. Section 2.08H of the MTA is clear and unambiguous that FCA did not assume any liabilities for wrongful death claims that include any claim for exemplary... So the reason, you know, there is this, I guess I'll call it quirky, I don't know if that's the right word, this unusual statute that labels these damages as punitive, or not the statute, but that the courts interpreting the statute consider these to be punitive, but in any other state or in most other states there would not be a bar, right? It would not be a bar on compensatory damages for wrongful death, and that's where the 150 years of finding Alabama Supreme Court precedent comes into play and was referenced. But doesn't it seem, I mean, what we're talking about here is still is a 363 sale under the Supreme Court. And, you know, through whatever kind of pressure there was because of bailouts and what have you, this amendment was entered in order to make sure that people who were harmed by old carco were compensated and only punitive damages are excluded. And I just wonder, I feel uncomfortable with a nationwide policy that compensates everybody except residents of Alabama who have been killed by virtue of defect manufacturing, for example. And I wonder whether this was, was or should be discussed in the context of 363 sales, that we ought to consider the fact that the juries are surely compensating for the loss as well as punishing, no matter what gloss the or whether, you know, bankruptcy courts should be instructed always in 363 sales of this ilk to have, to have the parties consider at least a carve-out for Alabama to ensure that citizens of Alabama are properly protected. What, can you enlighten me on that? Sure, a few responses, Your Honor. First, as we note in our briefing, with respect to the original sale order that was entered, which had a complete exclusion on product liability claims for old Chrysler vehicles. Complete exclusion. We were assuming nothing. The state of Alabama got notice of that order. They did not come forward and object at that time. Many, on behalf of tort victims, the plaintiff's part did. And those objections were overruled by the Bankruptcy Court. As this court knows, entry of the sale order was expedited on appeal to this court, given those national ramifications, and was affirmed. The question, and Your Honor is correct, this is a 363 sale. And that is critical. There are important federal bankruptcy considerations that favor the terms of the MTA being enforced, regardless of the outcome on these particular facts. It is critical that FCA, as a good faith purchaser of assets under Section 363, can continue to rely on the protections afforded by the sale order, irrespective of the passage of time. And counsel for the Attorney General said in his remarks a few moments ago, that they think it would be beneficial to have the threat of punitive damages hanging over FCA's head going forward. That is precisely, precisely, Your Honor, what was disclaimed affirmatively in amendment. Okay, but there's a question as to what exactly was disclaimed. So you said a moment ago that it's clear that it uses the term punitive damages. But of course, the Fifth Circuit in this Lohr versus Cowley case says, okay, here's a contract that says punitive damages, but we think punitive damages are damages that are awarded for conduct that is in statute, awards damages for negligent conduct, then it just doesn't meet the general definition of punitive damages. So certainly when we're trying to determine what punitive damages mean, if we agreed with you, we'd have to disagree with the Fifth Circuit, wouldn't we? I think the Fifth Circuit in that particular case can be distinguished on the facts there, which was they were interpreting an insurance contract. Well, they're interpreting an insurance contract, but really what they're saying is the insurance contract has the term punitive damages. What does punitive damage, what do punitive damages, what does that term mean? And they say it means damages that are, they go through a bunch of definitions, and they say, you know, despite some variation, they all say that it's damages that are awarded for more than merely negligent conduct. That's, the Fifth Circuit thought that's part of the definition of the term punitive damages, right? They did in that case, Your Honor, and we would submit that when we're talking about it, as Your Honor said earlier, what we're talking about is applying the plain meaning of that term. I would suggest that that case is the outlier. We submit, you know, a briefing, other definitions widely accepted, other situations where courts have recognized that punitive damages may be awarded in particular circumstances, not under this statute, but in particular circumstances where there is not compensatory damages. And I would suggest, Your Honor, that even this court, in its recent decision last year in General Motors, where you, where the court... Is there precedent aside from the, from the lower case, where you have, or aside from the Alabama statute, where you have punitive damages that are awarded for merely negligent conduct? I think, Your Honor, the question of negligent conduct here, right, because what we're, I think that is the issue that has been, perhaps this statute, I think what you're hearing from Alabama is that this statute is unique in some way. That is what the Alabama Supreme Court has repeatedly dealt with. The fact that punitive damages, notwithstanding the fact that compensatory damages are not available, and negligence is not available, these are, is what is a standard that is applicable. That the damages are in fact punitive. That the damages are in fact punitive in purpose. That goes to what was discussed by the appellants and counsel to the Attorney General earlier this morning. That what the purpose of this is to ensure, from the Alabama point of view, that there is no cap on those damages, just like regular punitive damages. That is precisely the issue as a deterrent to punish the culpable party. That was discussed by the Alabama Supreme Court in Senate v. Kennedy as recent as 2016, in which that court also reaffirmed that the about public purpose, when we're talking about policy, of the wrongful death statute is to present, prevent homicide, and to punish the culpable party. So I would suggest, Your Honor, we very well might be dealing with a situation that is unique, and maybe in some go-forward basis to address Judge Carney's concerns, maybe this is something that more attention needs to be paid to. But from the perspective of a 363 purchaser that entered, that has a sale order that was entered 11 years ago, we submit that that provision, which was clearly a carve-out on uncapped punitive damages, needs to be enforced. And I would suggest, Your Honor, that the appellants seek to minimize the effect of the binding Alabama Supreme Court cases that are that are cited in the lower court opinion. Can I ask you a question about the post-sale claims? Right, so the complaint does say that FCA took no action to warn, and as approximate result of that conduct, Sue Ann Graham suffered catastrophic injuries that resulted in her death. So why don't, and the district court didn't seem to acknowledge this, so why doesn't she have a viable claim against FCA for its own conduct? Your Honor, certainly there is, to the extent that there is a claim for FCA's own conduct that relates to a particular old Chrysler vehicle, that claim could survive the bankruptcy sale order. That argument was advanced by the appellants now in the bankruptcy court. The bankruptcy court, in fact, as they poured out, allowed the co-plaintiff's claim for injury, a post-sale claim against FCA basis. But Your Honor, the complaint itself is clear that the conduct alleged in support of the wrongful death claim all relates to the design, manufacture, distribution, and sale of the vehicle, which are all pre-sale issues. And that is that is clear from the damages demand, wherein the damages demand in the complaint, the plaintiff sought to make allegations specific to personal injury claims and not the wrongful death claims. The bankruptcy court, in this case, interpreting this sale order, has made clear that to maintain any independent claim against FCA, the proximate cause of the claim has to be due solely to the post-closing conduct. And there is nothing wrong with the way that the lower court excluded the, at least on this I mean, if FCA was aware of some kind of risk of 2000 vehicles manufactured in 2002, and they didn't tell anybody, you're saying that they can't, you can't ever have a claim, and it caused somebody's death, you can't ever have a claim against them? Because it would have been due in part because of the original manufacturing defects? That is our position. We believe that that's not an issue. That particular issue, and where that has been decided. But is it right? I mean, if you have all the assets and files and whatever of the original Chrysler company, and you discover some defect in an earlier manufactured vehicle, and so you're in possession of the knowledge, and you don't warn anybody about the risk, you're saying nobody could, nobody could bring a claim for that failure to warrant? Well, that would effectively be a duty-to-warn claim, of course, and that would be, the question would be, is that maintainable under state law? But before you get to that point... But you just said a moment ago, the sole cause of the death has to be the failure to warrant. But obviously, you know, the more immediate cause of the death was the defect itself about which you failed to warrant. So, based on what you said a moment ago, it sounds like you could never have that claim. Is that your position? With respect to, that is our position with respect to these claims. And, but again, I don't believe that issue has been presented on this appeal. But I do think that the lower courts were perfectly within their reasonable judgment to bar the entirety of the wrongful death claim, but bifurcate the compensatory claim as the bankruptcy court did. All right, thank you. We'll hear the rebuttal from Mr. Miller. Yes, Your Honor, a few points. As it relates to post-sale conduct, we did allege those claims in our complaint. We brought them up at oral argument at the bankruptcy court. We mentioned it in our briefing at the district court, and we fully briefed it here before the bankruptcy court. Well, I mean, but the opposing counsel is right, that if you look at the demand for relief, it says, as to Sue Ann Graham, all damage is allowable under the wrongful death act. And then it says, as to Jordan Graham, you know, failure to warn and so on. So, and then when you bring it to the district court, it appears in a footnote, right, on page six of your brief to that court. So then, is that really something about which the district court had noticed? Your Honor, I absolutely, I do believe the district court did have notice. And I think that, you know, when we're talking about, what we're really talking about is the application of state law as it relates to a state's proximate cause law. And under Alabama law, causes can concur to cause a result. So in this particular case, Sue Ann Graham's wrongful death claim would be originating out of FCA's failure to warn, and that is based on post-sale conduct. And I note, Your Honor, that this accident occurred seven years after the sale order was implemented. It's not as if it occurred, say, a month or two afterwards. FCA would have had this knowledge for a significant period of time, and that information would certainly transfer to the jury in determining, based on jury instructions as well as a verdict form, FCA's liability. I'd also, I'd like to turn also to You have one minute, so finish up, please. Yes, Your Honor. There was some mention about the original MTA and how FCA assumed no liability originally. I would just note, Your Honor, that there was a significant change in intent from FCA from the original master transaction agreement to the amended, amendment number four. And I think that that change in intent is significant here. Secondly, thirdly, there's this reference to FCA being subject to unbounded liability. I'll note a few things. One, the master transaction agreement does not bar uncapped damages. Two, we've noted numerous cases in Alabama and within the region comparing Alabama's negligence-based Wrongful Death Act verdicts to regional verdicts that are based on compensatory damages. And if I remove the names of those states and where they originate from, you wouldn't be able to tell a difference. But what you could tell a difference from is if you looked at the Wright case that we quoted in our briefing, which is based on the Alabama Wrongful Death Act, but was awarded based on wantonness conduct. And that was significantly greater than a negligence-based Wrongful Death Act that is measured based on the conduct, which is negligence. Finally, Your Honor. That's it. You're out of time. Thank you. We will  Thank you. Thank you, Your Honor.